# Richmond

## GOODLOE V. WOODS.

### November 20, 1913.

1. WILLS—*Reversion—Power of Disposition—Deed or Will.*—Under a
devise of land to several parties for their lives and "to be
disposed of by them at their deaths as they may think proper,"
the quoted words are not sufficient to limit the exercise of the
power of disposition to a disposition by will. Where a general
power of disposition over the reversion is given to the life
tenant of real estate, it may be exercised by a deed executed
and delivered during his lifetime.

2. JUDGMENTS—*Collateral Attack.*—The decree of a court of competent
jurisdiction, with all of the parties before it, settling the rights
of parties, their estates under a will, and the powers of the
parties over such estates, cannot be collaterally assailed.

3. CONTRACTS—*Rights of Third Persons—Marriage Settlement.*—If, in
a marriage settlement by a husband upon his wife, the husband
has failed to convey to his wife as large an estate in property
as, before marriage, he had contracted to convey to her, or has
conveyed the property to a trustee for the benefit of the wife
and the children to be born of the marriage instead of to the
wife only, these are not matters of which subsequent purchasers
from the wife can complain.

4. ESTATES—*Fee-Simple—Gift to Wife and Children—Deeds—Wills.*—
A gift to a wife and children, without more, vests a joint estate
in the wife and children in equal portions. The language "to
the mother and her children," standing alone, does not create a
fee simple in the mother. The mother is given a fee-simple only
when it appears from the context, or from the whole instrument
taken together, that such was the intention of the testator, or
of the grantor, if the gift was by deed.

5. JUDICIAL SALES—*Rights of Purchaser.*—A purchaser at a judicial
sale takes only the rights or interest of the parties before the
court, and persons not before the court are not bound in any
way by the proceedings.

6. PARTIES—*Representation.*—The doctrine of representation applies
only to contingent interests, and, further, in order to represent
parties not before the court, the party before the court must

be one of a class whose interests are identical with the parties to be represented.

7. JOINT OWNERS—*Purchase of Title by One.*—A co-owner of property cannot purchase an outstanding title except for the common benefit. If such owner pays off an encumbrance on the property and takes a deed to himself, he holds the title for all the co-owners, but is entitled to credit for such payment in any settlement thereafter made with them.

8. TENANTS IN COMMON—*Deed by One—Effect.*—A deed from a tenant in common carries to the grantee only an undivided interest in the property, no matter by what description the property is conveyed.

9. VENDOR AND PURCHASER—*Defective Title—Rights and Liabilities of Vendee.*—If a vendor is unable to convey good title to a purchaser who has been put in possession of land, the purchaser should be given the privilege of accepting such title as the vendor can make; but, if he refuses to avail himself of the privilege, a court of equity will decree the surrender of the land to the vendor.

10. APPEAL AND ERROR—*Amount in Controversy—Interlocutory Decree.*—A decree fixing upon a party liability for rents is interlocutory until the amount of the rent is ascertained. The amount may not be sufficient to give this court jurisdiction.

11. VENDOR AND PURCHASER—*Defective Title—Surrender of Possession—Rents—Improvements.*—Where real estate is sold and the vendor cannot give a good title, but puts the vendee in possession, who makes improvements thereon, if an accounting is taken, the rents and profits up to the time of the decree for the surrender of the property should be set off against the improvements. The vendee is chargeable with reasonable rents and profits, and with any waste committed by him.

12. COSTS.—Costs in trial courts are in the discretion of those courts and their action will not be reversed, except upon a clear showing of abuse.

Appeal from a decree of the Circuit Court of Nelson county. Decree for the complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Coleman, Easley & Coleman,* for the appellants.

*Caskie & Caskie* and *S. B. Whitehead,* for the appellees.

HARRISON, J., delivered the opinion of the court.

On June 5, 1909, Sallie E. Woods and Samuel F. Woods, her husband, entered into a contract with W. G. Goodloe, whereby they undertook to sell him a tract of land in Nelson county, containing one hundred and sixty-five acres, at the price of $1,150. Of this sum the purchaser paid twenty-five dollars in cash, undertook to have a proper deed of conveyance prepared, took possession of the land, and afterwards transferred the benefits of the contract to one E. L. Mathews, and delivered to him the possession. Neither Goodloe nor Mathews ever paid anything on the purchase except the $25.00 mentioned, and on the 18th of August, 1910, more than a year after the contract was made, Goodloe wrote to Mrs. Woods, the vendor, that there was trouble about the title, and that nothing would be paid on account of the purchase until the title was cleared up.

To the following April rules (1911) the appellees filed the bill in this case, in which they set out the facts mentioned, and allege, among other things, that they were advised that the land in question belonged equally to the appellee, Sallie E. Woods, and her two children; that if this was true the parties were powerless to convey the interest of the children, and that it would be inequitable to allow the appellants to retain the land and refuse to pay any part of the purchase money. The prayer of the bill was that the contract might be specifically executed, if the purchasers were willing or could be required to take such title as Woods and wife could give, or that the contract be rescinded and complainants restored to the possession of the land, and that the defendants be required to account for a fair and reasonable rent during the time it had been in their possession.

W. G. Goodloe, E. L. Mathews and the two children of Sallie E. Woods were made parties defendant to this bill, with leave to answer, affirmation to such answers being waived.

Percy L. Woods, one of the children of Sallie E. Woods, (an adult) answered the bill, asserting his rights in the land, insisting that he has done nothing to impair such rights, and objecting to any action that would interfere with his ownership, or any right he may have in the land. Ruth Woods, the other of the two children, is an infant and answered by guardian *ad litem,* asking that her rights be protected.

The defendants, Goodloe and Mathews file separate answers in which each of them denies that the two children of Sallie E. Woods have any interest in the land, and insist that Samuel E. Woods and wife should be required to specifically execute their contract by making a clear title thereto.

The circuit court held that the children of Sallie E. Woods were jointly interested with her in the land; that the title was not such as the purchasers should be required to take, and allowed them to elect whether they would take such title as their vendors could give, and if not that the parties should be restored to their former rights. The purchasers declining to accept such title as they were held to be entitled to under their contract, the court directed that the possession of the land should be restored to Sallie E. Woods and her two children, and referred the cause to a commissioner to take an account of rents, improvements, etc. From this decree the defendants, Goodloe and Mathews, have taken this appeal.

Whether or not the decree complained of is right depends upon the correctness of its conclusion that the children of Sallie E. Woods have a vested interest jointly with her in the land in controversy. The record shows that in 1869

James Woods, of Nelson county, died, leaving a will, by the fifth clause of which he devised certain lands to ten persons, of whom Samuel F. Woods was one, during their respective lives, and to be disposed of by them at their deaths as they might think proper, and provided for a division of the lands between the parties. A division of these lands was had, the tract involved in this controversy being assigned to Samuel F. Woods. Soon after the death of James Woods a chancery suit was brought in the circuit court of Nelson county to administer his estate, to which all of his devisees were made parties. In this proceeding the will of the deceased had to be, and was, construed by decree therein of September, 1871, the court holding that the parties mentioned in the fifth clause of the will took a joint estate for life in the lands, moneys, etc., left them by that clause, with power of appointment, either by deed or will, to take effect at their death. So that the proper court, with all proper parties before it, more than forty years ago, adjudicated and determined that Samuel F. Woods took a life estate in the land now in controversy, with a power of appointment to take effect at his death, and that this power might be exercised either by deed or will. No appeal was ever taken from that decree.

By contract dated June 5, 1886, Samuel F. Woods agreed to convey his entire interest in the estate of James Woods, deceased, to Sallie E. Canady upon the consummation of her marriage with him. One week after this contract was made, by deed dated June 12, 1886, Samuel F. Woods, after reciting the contract and the consummation of the marriage, in consideration thereof conveyed to I. A. Paul, trustee, the tract of land in question, upon trust for the use and benefit of his wife, Sallie E. Woods, and all children hereafter to be born of her by the grantor, providing that in the event of her death without issue the property should revert to the grantor.

It is not controverted that Samuel F. Woods took a life estate in the land assigned to him under the will of James Woods, deceased, with a power of appointment as to the remainder, but the appellants contend that whilst the deed to Paul, trustee, made in pursuance of the marriage contract, conveyed the life estate, it was unauthorized as to the remainder because the power of appointment could only be exercised by will.

The will of James Woods prescribes no method by which the power is to be exercised, nor is there anything to indicate that the testator intended that any particular method should be adopted, unless the language, "to be disposed of by them at their deaths as they may think proper," can be construed as an intimation that the power is to be exercised by will. In our opinion that expression is not sufficient to limit the exercise of the power to a will.

In 22 Am. & Eng. Ency. Law (2nd Ed.), pp. 1107-8, the rule, supported by authorities, is laid down as follows: "No special mode is necessary for executing a power unless there is a provision in regard thereto in the instrument creating the power. In the absence of such provisions the power may be executed by deed, will or other simple writing, sufficient as regards the subject matter. Thus where a general power of disposition over the reversion is given to the life tenant of real estate, it may be exercised by a deed executed and delivered during his lifetime."

In 31 Cyc., p. 1115, it is said: "As a general rule a power must be executed in strict accordance with its terms, but where no mode is prescribed, or where the manner of execution is left to the discretion of the donee, he may execute it in any manner which will legally effectuate the intention of the donor." In support of this text the author cites *Knight* v. *Yarborough,* 4 Rand. (25 Va.) 566, and *Cowles* v. *Brown,* 4 Call (8 Va.) 477.

35

In the case last cited the testatrix devised certain slaves to her husband for life with power at his death to divide them among the children of Thos. and John Cowles. The husband made the appointments and disposed of the slaves, or some of them, in his lifetime, and this exercise of his power was sustained.

The authorities seem to fully sustain in the method of exercising the power reposed in him by the will of James Woods, which was adopted in the case at bar by Samuel F. Woods. It was, however, unnecessary to consider that question, for the law of this case on that subject was clearly settled by the decree of September, 1871, already mentioned, in the case of *Wood* v. *Wood,* which decided that Samuel F. Woods took, under the will of James Woods, deceased, an estate for life with power of appointment either by deed or will, to take effect at his death. That decree settled the question and left no longer any doubt as to the interest of Samuel F. Woods in, or his power over, the land in controversy. The validity of that adjudication has never been questioned until assailed in this collateral proceeding forty-two years after the decree was rendered.

Appellants further say that by the terms of the marriage contract Samuel F. Woods bound himself to convey to his contemplated wife his entire interest in the estate of James Woods, and insist that he did not do so. We fail to appreciate the pertinency of this contention in the case before us. If Samuel F. Woods violated his contract with his wife she could call him to account therefor, but it would constitute no ground for compelling him to exercise his power of appointment in favor of the appellants or either of them. Samuel F. Woods had no interest in the land except a life estate. He conveyed that life estate by the deed to Paul, trustee, and the only complaint that can be made is that he conveyed it to a trustee for his wife and the children of their marriage rather than to her alone. In this

the wife acquiesced, and has not only been claiming under the deed ever since it was executed, twenty-six years ago, but has defended it when assailed and had its validity judicially determined.

Appellants contend that if the deed to Paul, trustee, for the benefit of Sallie E. Woods and her children is valid, under its terms the children have no interest in the property and the mother takes the fee simple. In support of this proposition appellants refer to the line of cases of which *Wallace* v. *Dold,* 3 Leigh (30 Va.) 258, was the first.

The law is settled that a gift to a wife and children, without more, vests a joint estate in the wife and children in equal portions. The language "to the mother and her children," standing alone, is not sufficient to create a fee simple in the mother. The mother is given a fee simple only when it appears from the context, or the whole instrument taken together, that such was the intention of the testator. *Fitzpatrick* v. *Fitzpatrick,* 100 Va. 552, 42 S. E. 306, 93 Am. St. Rep. 976. This rule is as applicable in the case of a gift by deed to a mother and her children as it is to such a gift by will.

The language of the deed bearing upon this question is as follows: "Nevertheless, upon trust for the use and benefit of the said Sallie E. Canady, who is now Sallie E. Woods, the wife of Samuel F. Woods, and all children hereafter to be born of the said Sallie E. Woods by her said husband Samuel F. Woods, and should the said Sallie E. Woods die without issue, then and in that event the said property hereby conveyed shall revert to the said Samuel F. Woods."

We find nothing in this language to indicate a purpose to give Sallie E. Woods the entire fee in the property conveyed. On the contrary the reverse quite clearly appears, it being expressly provided that it should go to her and her children, and if she had no children it should, at her death, go back to the said Samuel F. Woods.

·· It appears from the record that during the progress of the old suit of *Woods* v. *Woods,* which was brought for the purpose of settling the estate of James Woods, deceased, it was found necessary to have recourse to the lands devised by James Woods, in order to pay the debts for which his estate was liable, and the deed from Samuel F. Woods to Paul, trustee, was called in question. The court, in 1891, held the deed to be valid and binding between the parties, but void as to the creditors of James Woods, deceased. The share of the indebtedness for which the land in controversy was held liable was fixed at $180.00 and a sale was ordered and made to satisfy that sum. At that sale Sallie E. Woods became the purchaser of the property at a price many times more than sufficient to satisfy the $180. This sum of $180 was afterwards paid by Saillie E. Woods, and was the only sum paid by her on account of her purchase. · Subsequently a deed conveying the land to Sallie E. Woods was made by a commissioner of the court. The appellants rely upon this transaction as placing the fee simple to the land in Sallie E. Woods. It is conceded that the children of Sallie E. Woods were not before the court in the case of *Woods* v. *Woods,* and nothing is better settled than that a purchaser at a judicial sale takes only the rights or interest of the parties before the court, and that persons not before the court are not bound in any way by the proceeding.

But it is suggested that their father, Samuel F. Woods, was before the court and represented his children. At the time the sale referred to was made the older of the two children of Sallie E. Woods was an infant of very tender years, and the youngest was not born. These children clearly took a vested interest under the deed to Paul, trustee, in the land in dispute. The doctrine of representation applies only to contingent interests, and further, in order to represent parties not before the court, the party

before the court must be one of a class whose interests are identical with the parties to be represented. *Baylor* v. *De-Jarnett,* 13 Gratt. (54 Va.) 153-166; *Faulkner* v. *Davis,* 18 Gratt. (59 Va.) 684, 98 Am. Dec. 698; *Harrison* v. *Walton,* 95 Va. 725, 30 S. E. 372, 41 L. R. A. 703, 64 Am. St. Rep. 830; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *Downey* v. *Sieb,* 185 N. Y. 427, 78 N. E 66, 8 L. R. A. 77, and note, 113 Am. St. Rep. 926; *Detrick* v. *Meyatt,* 19 Ill. 146, 68 Am. Dec. 584.

In *Harrison* v. *Walton, supra,* it is said: "The doctrine of virtual representation has been introduced, by which certain parties before the court are regarded as representing those coming after with contingent interests. Citing *Baylor* v. *DeJarnett, supra.*

If, however, these children had both been in being and had been parties to the suit, the sale to Sallie E. Woods would not have deprived them of their interest in the land. It is well settled that a co-owner cannot purchase an outstanding title except for the common benefit. The purchase made by Sallie E. Woods from the commissioner, for which she discharged the small liability upon the land of $180, enured to the benefit of her children who were co-owners with herself, and they were not deprived of their rights and interests by the deed being made to their mother alone. She was merely paying off a small incumbrance against the lands owned jointly by herself and her children, and is entitled to credit for such payment in any settlement made with her co-owners. *Forrer* v. *Forrer,* 29 Gratt. (70 Va.) 134; *Buchanan* v. *King,* 22 Gratt. (63 Va.) 414; *Pillow* v. *Southwest Va. Imp. Co.,* 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 809; *Va. Coal, &c., Co.* v. *Kelly,* 93 Va. 332, 24 S. E. 1020.

It further appears that in 1886, prior to the marriage of Samuel F. Woods, he conveyed the property in contro-

versy to a trustee to secure a debt of $186.25. This debt subsequently became the property of Rachael Clampitt and was paid off by Sallie E. Woods with money which she borrowed from Virginia Dickerson and secured to her by deed of trust on the property. The property was sold to satisfy this debt and bought by Virginia Dickerson for the amount due her. Virginia Dickerson having received a deed from the trustee, subsequently reconveyed the land to Sallie E. Woods. Whatever change these transactions may have made in the title, the interests of the children in the property were not affected thereby. Sallie E. Woods had no power to convey as security for the Dickerson debt anything more than her undivided interest in the property. A deed from a tenant in common carries to the grantee only an undivided interest in the property, no matter by what description the property is conveyed. *Woods* v. *Early,* 95 Va. 307, 28 S. E. 374; *Parker* v. *Brast,* 45 W. Va. 399, 32 S. E. 269.

When, therefore, the property was reconveyed to Sallie E. Woods by Virginia Dickerson, she took and held it under the same terms and conditions as before she parted with it. Apart from this view, Virginia Dickerson was a party to the suit of *Woods* v. *Woods,* and had constructive, if not actual, notice of every fact therein showing the interest of the children in the land and the limited interest of Sallie E. Woods therein.

There being no error in the ruling that the children of Sallie E. Woods had a vested interest in the land, the circuit court properly held that the appellants could not be compelled to accept a defective title, and properly gave them the privilege of accepting or not, as they chose, such title as their vendors had. The appellants having declined to accept the unsatisfactory title, the court properly directed the property to be returned to the parties to whom it belonged.

As already stated, the appellants were placed in possession of the land when the contract of sale was executed. The circuit court held that the party in possession of the land was liable to the owners thereof for a reasonable rent during the period of his occupancy, subject to a credit for such part of the purchase money as was paid, less the value of any permanent improvements placed on the land by the appellants, and referred the cause to a commissioner to take an account showing what balance of rent, if any, was due by the party in possession. This action of the court is assigned as error.

As to the matter of rent due, if any, no amount has been ascertained or fixed. Whether upon the coming in of the report ordered it will be held that the parties are entitled to any decree for rent, and if so whether the amount will be sufficient to give this court jurisdiction, has not yet developed. As to this subject the decree appealed from would seem to be interlocutory merely; but be that as it may, it is, we think, settled that where real estate is sold and the vendor cannot give a good title, but puts the vendee in possession, who makes improvements thereon, if an accounting is taken, the rents and profits up to the time of the decree for the surrender of the property are to be offset against the improvements. The vendee is chargeable with reasonable rents and profits, and with any waste committed by him. *Hoover* v. *Calhoun,* 16 Gratt. (57 Va.) 109; *Walker* v. *Beauchler,* 27 Gratt. (68 Va.) 511. That the costs are in the discretion of the court cannot be questioned, and its action will not be reversed, except upon a clear showing of abuse. *Dillard* v. *Dillard,* 77 Va. 820. There is nothing in the case at bar to show any abuse of the court's discretion, or any reason for disturbing its award of costs against the appellants.

Upon the whole case we find no error in the decree appealed from and it is affirmed.

*Affirmed.*