Balogh, Jr., Appellant, *v.* Sacks, Appellee.

(No. 4396—Decided January 6, 1954.)

*Messrs. Meade, Weygandt & Leonard,* for appellant.
*Messrs. Harris, Sacks & Subrin,* for appellee.

Doyle, P. J.   Fred Sacks, the owner of a lot in a re-corded allotment, entered into an option agreement with one Steve Balogh, Jr., for its purchase.   Balogh exercised the option, and, in pursuance of the agree-ment, paid $485 as partial payment, in addition to $15 which he had theretofore paid as consideration for the option.

Later, Sacks tendered a deed to Balogh, who trans-

mitted it to his attorney for examination. Soon thereafter Balogh learned of an 18-inch gas line which crossed his lot, by virtue of a right-of-way or easement given the East Ohio Gas Company many years prior, and concealed three or four feet deep into the earth. Balogh thereupon brought suit to rescind the contract and to recover back the money paid.

Upon trial the court entered judgment as a matter of law for the defendant, Sacks. This judgment is now before this court on appeal. Error is claimed in the court's ruling.

The purchaser, as shown by the evidence, exercised the option which contained the following specific stipulation:

"That if this option be duly exercised by the optionee, * * * the optionor agrees to convey said lot to the optionee by a duly executed deed of general warranty, with release of dower, * * * free from all encumbrances, except taxes and assessments, general and special, for the year 1951, restrictions, limitations, *easements*, reservations, and conditions of record, and subject to any state of facts that an accurate survey will disclose, and to furnish the optionee with a certificate of title showing a marketable title to said lot in the name of the optionor, free and clear from all encumbrances, *except as aforesaid.*" (Italics ours.)

It is claimed that Balogh, the plaintiff, was a builder of houses, and he negotiated for the purchase of the lot for the purpose of building a home thereon for resale to the public; that although the defendant "did not make any positive misrepresentations that a gas line did not exist, * * * after the plaintiff had stated his business and his intent to construct a dwelling house, the defendant, knowing of the impossibility of constructing such house in a proper location, re-

mained silent, although he knew of the location of the gas line; * * * that concealment of these material facts was equivalent to positive misrepresentations; that there was a duty on the part of the defendant to disclose the gas line, under the situation existing between the parties at the time of negotiation; and that defendant's concealment was fraud because the gas line was concealed and a latent defect not discoverable upon examination of the premises.''

In contradiction of part of the above claim, the fact is that a house was in fact built on the lot in question in accordance with lot restrictions, although such house and its location on the lot did not perhaps correspond to the type or location of the house which the plaintiff contemplated erecting. It is a further fact that an easement across the land, which later was allotted, and of which the lot in question was a part, was recorded many years ago in the public records of the county.

In the light of the facts and the general rules of law, we believe the following statement appropriate: A party can commit a legal fraud in a business transaction with another by fraudulent misrepresentations of material fact, or by such conduct or artifice, for a fraudulent purpose, as will mislead the other party, or throw him off his guard, and cause him to omit inquiry or examination, which he would otherwise make. However, when there is no relation of trust or confidence between the parties as imposes upon one an obligation to give full information to the other, the latter cannot proceed blindly, omitting all inquiry and examination, and then complain that the other did not volunteer to give the information he had. Ignorance of a fact not essential to a contract, but which, if known, might have influenced the action of a party, is

not per se such a mistake as will afford legal or equitable relief. See: 55 American Jurisprudence, Vendor and Purchaser, Sections 57 and 62, and cases therein cited.

In the case before us, the easement was, of course, a limitation to a clear, unencumbered title to the property. *Warren* v. *Brenner,* 89 Ohio App., 188, 101 N. E. (2d), 157. It was, however, placed on record and open to the inspection of the diligent. Indeed, when the option was given and later accepted, the specific language of the option instrument undertook to convey title free from encumbrances, *except* certain specified items, which, in terms, included "easements." If this language alone is not sufficient to defeat the claim of the purchaser (which we do not decide), certainly it was sufficient to put him on notice, and to neutralize and counteract an affirmative obligation to speak of the easement.

In conclusion, we reiterate that the charge is concealment or failure to speak, and nothing more, and that, under the circumstances, it was the duty of the vendor to speak.

We do not think the claim is sound in law. The parties dealt at arms length. There was no legal duty to speak of the easement. The vendee was warned in the option of such an encumbrance, and it was easily discoverable by a prudent person. The law does not make a vendor the guardian of a purchaser dealing at arms length with him, nor does the law, under these circumstances, create a sword of Damocles to threaten, under the guise of fraud, the legal security of a vendor.

The judgment will be affirmed.

*Judgment affirmed.*

STEVENS and HUNSICKER, JJ., concur.