It is clear, therefore, that the holding that the parking garage involved here is for a public purpose did not decide that it was either governmental or proprietary.

It does not appear to us that there is any reason, either in authority or logic, for calling the operation of this parking garage an essential governmental function, no matter how useful or desirable or well authorized it may be. We feel it is clearly a proprietary function and that the court below was fully justified in so holding.

For the reasons above set forth we conclude that the operation of the Columbus parking garage, while having the characteristics both of a public and a municipal function, is in the nature of a proprietary function and not a governmental function, from which it follows that the trial court did not commit. error in so holding. The eleventh assignment of error is not well taken and must be overruled. Having concluded that none of the assignments of error are well taken, the judgment of the court below must be, and hereby is, affirmed.

*Judgment affirmed.*

PETREE, P. J., and MILLER, J., concur.

ADAM ET AL., APPELLEES, *v.* SOUTHWOOD, APPELLANT; FOY ET AL., APPELLEES.

(No. 4791—Decided May 14, 1958.)

*Messrs. Meade, Weygandt & Leonard,* for appellant.

*Mr. William A. Slater,* for appellees Oliver J. Foy and Kathryn Foy.

*Mr. Wm. J. Whelton,* for appellee Louis Stile, d.b.a. Louis Stile Realty Company.

HUNSICKER, P. J.   This is an appeal on questions of law and fact from a judgment entered in behalf of Oliver J. Foy and Kathryn Foy by the Common Pleas Court of Summit County, Ohio.

An action was begun by Steve E. Adam and June W. Adam, husband and wife, against Richard J. Southwood and Lena Southwood, husband and wife.   The Adams sought to have the Southwoods remove a fence that it was claimed barred the use of a garage on the Adam premises.

Later, upon their application, Oliver J. Foy and Kathryn Foy, husband and wife, were made parties to this action.   At the request of the Foys, Louis Stile, doing business as Louis Stile Realty Company, was also made a party to the action.

The Foys then filed an answer and cross-petition therein, in which they said that they purchased, on June 2, 1956, under a land contract dated June 7, 1956, the premises owned by the Southwoods; and that Louis Stile was the real estate broker who made certain representations to them regarding the Southwood property.

The Foys seek a rescission of the contract of purchase, claiming that Richard Southwood, Lena Southwood and Louis Stile secured the signature of the Foys to the contract of purchase "through the false statements and misrepresentations made by the defendants, and their broker * * *."

The Foys claim that they were not notified of the pendency of the action by Adam against Southwood, and that Southwood "cannot obtain a clear title to the property involved in this action."

On October 17, 1957, a judgment was entered in behalf of the Southwoods in the action of Adam versus Southwood.   In that judgment, the trial court determined that Adam had no other interest in the Southwood property, except as to a drive-

way running from Grant Street, upon which the house faced, to a garage situated on their property.

This judgment was not appealed by Adam. We, therefore, are not now interested in that phase of the case.

Thereafter, on the 6th day of January, 1958, a trial of the issues presented by Foy against Southwood and Stile was begun in the Common Pleas Court. It is the judgment rendered in that hearing that is now brought to this court upon appeal on questions of law and fact. Some additional evidence was presented to this court. On that evidence, and the transcript of testimony and exhibits taken in the trial court, this case is submitted to this court for determination.

On lot 85 in the A. C. Voris Allotment, two houses were constructed. One, owned by Southwood, is numbered 917 Grant Street; the other, owned by Adam, is numbered 921 Grant Street. An 8-foot joint driveway extends between the two houses to the rear portion of the premises. This driveway is made up of the south four feet of 917 Grant Street and the north four feet of 921 Grant Street.

In the action of Adam against Southwood, Adam claimed a right to pass over an additional portion of the premises located at 917 Grant Street. It was this claim that was pending when Southwood sold, under a land contract, the house and lot numbered 917 Grant Street, to the Foys.

Our question herein is to determine whether the Foys were induced to enter into the land contract by reason of the false representations of Southwood and his broker-agent, Stile.

The controversy between Southwood and Adam, concerning the right to use more of the Southwood land for driveway purposes than the 4-foot driveway easement, has now been determined in favor of Southwood. There is no question that, at the time the land contract was entered into with Foy, there was a lawsuit pending, which, if it were decided in favor of Adam, would have seriously affected the use of the property at 917 Grant Street.

The testimony of Mrs. Foy is that she and Mr. Foy moved into the house in July of 1956. She and her husband learned of the pending lawsuit in January, 1957, after they, along with the Southwoods, were cited into court for contempt. At that time

the Foys asked (as Mrs. Foy said) to be let out of the contract. The Foys offered then to return the property, and asked only that the money they had paid be returned to them.

On the witness stand in this court, Mrs. Foy again said that they wished to turn back the property and get their money back. The first such attempt to rescind was made in January, 1957, at the time of the contempt action; and that offer to return the property and receive the money advanced thereon was made at least two other times before the offer in the court to return the property and get their money back.

We believe this was a sufficient offer to return the property. No specific form of words need be used if the parties understand what the purpose and intent was in the words that were used in making the offer to rescind.

From the transcript of the evidence, an examination of the exhibits, and hearing the testimony given in this court, this court must come to the same conclusion as reached in the trial court.

Southwood, the vendor, stated that all matters involving the fence—and this was a matter concerned with the lawsuit—were settled; whereas, in truth and in fact, the lawsuit had not as yet been heard. Southwood should have disclosed to the buyers, when inquiry was made, the exact status of the controversy.

We determine that a disclosure concerning the lawsuit was not made, and that such failure of disclosure induced the buyers to enter into the contract. The buyers are entitled to a judgment of rescission.

We do not have a situation in this case comparable to that which existed in *Balogh* v. *Sachs,* 97 Ohio App., 17, 123 N. E. (2d), 37, where the vendor remained silent concerning an easement of public record. Here, we have a situation where a positive statement, with respect to the property, was made to the purchaser; and, at the time such statement was made, the difficulties that had arisen between the owners of 917 Grant Street and 921 Grant Street had not been resolved. The lawsuit was then pending and had not been heard.

The testimony of the Foys was to the effect that they were induced to enter into the contract of purchase, believing that all matters of dispute between the owners of the adjoining properties had been adjusted.

This is not a case of nondisclosure, but a case which arises out of a misrepresentation that induced the sale. The rule announced in *Cross* v. *Ledford,* 161 Ohio St., 469, 120 N. E. (2d), 118, applies in this case.

Although the parties have not stressed the matter of rents, due the vendor, upon a rescission by a purchaser, we desire to set forth the rule of law applicable in such a situation.

It is a general rule that there is an implied obligation to pay rent by a vendee in possession who has disaffirmed the contract of purchase. This obligation to pay a reasonable sum for use and occupancy *ab initio* arises where the disaffirmance is by the vendee.

*Weeks* v. *Standish Hardware & Storage Co.,* 145 Me., 307, 75 A. (2d), 444; *Beaudry* v. *Favreau,* 99 N. H., 444, 114 A. (2d), 666; *Tomkins* v. *Sandeen,* 243 Minn., 256, 67 N. W. (2d), 405, 49 A. L. R. (2d), 1162; *Utemark* v. *Samuel,* 118 Cal. App. (2d), 313, 257 P. (2d), 656; *Lutz* v. *Cunningham,* 240 Iowa, 1037, 38 N. W. (2d), 638; *Duncan* v. *Duncan,* 259 Ky., 844, 83 S. W. (2d), 485; *Goodloe* v. *Woods,* 115 Va., 540, 80 S. E., 108; *Rummer* v. *Throop,* 38 Wash. (2d), 624, 231 P. (2d), 313; 12 Am. Dec., 312, annotation, ''Rights of Vendee on Rescission,'' and authorities there cited; 91 Corpus Juris Secundum, Vendor and Purchaser, Section 180.

We do not find any Ohio case exactly in point; however in *Higby* v. *Whittaker,* 8 Ohio, 198, a case where the purchaser sought to rescind because of false representations, the court, in deciding the issues, said, in the course of the opinion, at pages 201-202:

''But it is said, before the contract can be rescinded, the money paid must be refunded. Such, as a general rule, is cor·rect. But, in this case, it is conclusively shown that the complainant is equitably indebted to the defendants for the use, rents, and profits of the property, to a much larger amount than he has paid. Justice would, in such case, seem to require that the amount paid by the complainant should be considered as so much paid for the rent and profits, and, as the case and parties are all before us, there would be a propriety in decreeing against the complainant for the balance which will still be due. The whole controversy would then be at an end. This is not sought

by the defendants, however, and we will, therefore, leave the parties to settle such portion of the rents and profits as remains due, in another tribunal.''

Of similar import is the case of *Keck, Exrx.,* v. *Jenney,* 1 Clev. L. Rep., 90, 4 Dec. Rep., 173.

We must note, however, that Southwood has not asked for an amount as rent, or for use and occupancy, in this action; and, as stated in the case of *Higby* v. *Whittaker, supra,* ''we will, therefore, leave the parties to settle such portion of the rents and profits as remains due, in another tribunal.''

An entry may be prepared similar to that set forth by the trial court; and since one of the parties has requested conclusions of fact found separately from conclusions of law, the party requesting such statement shall, within five days, as required by Rule VI of the Rules of Practice of the Courts of Appeals, Volume 103, Ohio Appellate Reports, submit such conclusions to opposing counsel.

Decree as in the court below.

*Decree accordingly.*

Doyle and Stevens, JJ., concur.