OPINION *Page 2 
{¶ 1} Plaintiffs-appellants Elton Smith, Cheryl Smith, and Michele Frazier appeal a judgment of the Court of Common Pleas of Stark County, Ohio, which rescinded the contract for sale of a house plaintiffs bought from defendants-appellees Robert Simmons and the Estate of Betty J. Simmons, deceased. Appellants assign three errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD OR CONSIDER ADDITIONAL EVIDENCE REGARDING PUNITIVE DAMAGES AND ATTORNEY'S FEES.
 {¶ 3} "II. THE TRIAL COURT ERRED IN FAILING TO AWARD EQUITABLE DAMAGES IN RESCISSION.
 {¶ 4} "III. THE TRIAL COURT ERRED IN THE AWARD AND VALUATION OF RENT."
 {¶ 5} This matter was tried to the court, which made findings of fact and conclusions of law. The court found the property had been owned by appellee Robert Simmons and his late wife. Appellees lived in Florida from November through May until the year 2000, during which time appellees' son-in-law, Charles Asente, maintained the property in question.
 {¶ 6} More than five years prior to the sale of the property, Coblentz Plumbing installed a sump pump in the side yard of the property at Asente's request. At the time appellees were not aware of the any flooding, although subsequently, they learned the property flooded because of heavy rain and the failure of the pump to operate. At no time did water damage the residence. *Page 3 
 {¶ 7} On March 14, 2002, appellees signed a residential property disclosure form pursuant to R.C. 5302.30. The form does not require a disclosure of a sump pump, but does require a seller to disclose any problem with flooding or drainage. On March 15, 2002, appellees employed Coblentz Plumbing to repair the sump pump because water was pooling in the yard. The pump was inoperable and Coblentz installed a new sump pump.
 {¶ 8} On or About April 5, 2002, appellants, the Smiths, made a written offer of $185,000 to purchase the subject property. On April 6, 2002, appellees accepted the offer. Appellant Frazier is the daughter of the Smiths and the property was purchased as a residence for Frazier and her son.
 {¶ 9} Within one week of her move on June 1, 2002, Frazier noticed the grate in the lawn. She also became aware of the sump pump, but there was no water pooling on the property at the time. The first time appellants noticed water on the property was in September, 2002, during a torrential rain storm. The sump pump was not working and water pooled on the property. In addition, the run off from the neighbors' properties contributed to the flooding. The pump was repaired and it worked from the fall of 2002 to the spring of 2003. The flooding on the property was dependent upon rainfall, on whether the pump was working, and on whether water drained off from any neighboring properties. A larger pit and bigger sump pump could alleviate the water problems, but appellants did not get any estimates or have any such work performed.
 {¶ 10} Prior to trial, appellants filed an amended complaint demanding rescission of the contract. Appellant Frazier testified she could no longer live in the home. During the time Frazier lived in the home, appellants made permanent enhancements to the *Page 4 
property. Appellants presented numerous receipts for the funds they had expended on the home. In addition to the $185,000 purchase price, appellants asked for $115,183.08, plus attorney fees for a total of $323,240.00 as of September 2006.
 {¶ 11} The trial court granted rescission of the contract and found appellants are entitled to the purchase price of the home, plus closing costs and permanent enhancements to the property. The court found the enhancements to the property included a roof replacement for $4500, water heater for $372.34, windows and doors at $8690.25, and expenses of $2301.81 relative to the sump pump and electrical services, which when added to the purchase price totaled $207,638.56. The court also found the appellees are entitled to the fair rental value of the property at the rate of $12,000 per month from June 1, 2002 through the transfer of the property. The court found the set off amount as of January 31, 2007 totaled $67,200.00. The court concluded appellants were entitled to $140,438.56 for rescission of the contract, and they must return possession and title of the property to appellees free and clear of all liens and encumbrances. The court also ordered a per diem reduction of the award of $39.45 as rent for each day after January 31, 2007 appellants failed to transfer the property.
 I. {¶ 12} Appellants' first assignment of error argues appellants were mislead or misunderstood the court's ruling to defer the issue of punitive damages until after hearing the merits of the claim for rescission. Thereafter, in its conclusions of law, the trial court correctly stated in order to be awarded punitive damages, a plaintiff must show the fraud is aggravated by the existence of malice or ill will, or must demonstrate the wrongdoing is particularly gross or egregious. The court found the appellants had *Page 5 
not proven the existence of malice or ill will, and denied punitive damages and attorney fees. Appellants argue they would have presented further evidence on the issue had they known the court would not conduct a separate evidentiary hearing on punitive damages. Appellants argue the lack of an evidentiary hearing denied them the ability to explore and assess what they characterize as the predatory style and efforts appellees used in perpetrating their fraud, and denied appellants the right to inquire as to the financial and acuity, disparity, and relationship between the parties.
 {¶ 13} The parties agree our standard of reviewing this issue is the abuse of discretion standard. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court, Pons v. Ohio State Medical Board (1993), 66 Ohio St. 3d 619, 621. Instead, we cannot reverse the trial court's decision unless we find the trial court abused its discretion. The Supreme Court has repeatedly held the term abuse of discretion implies the court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., Blakemore v.Blakemore (1983), 5 Ohio St. 3d 217, 219.
 {¶ 14} Appellees maintain the court did not bifurcate the trial, but rather, simply deferred taking evidence about the amount of punitive damages and attorney fees until it decided whether punitive damages and attorney fees were warranted
 {¶ 15} At trial, appellees moved the court to dismiss the claims for punitive damages and attorney fees, arguing appellants had failed to prove actual malice or reckless indifference to the safety of others, by clear and convincing evidence. Appellants' counsel responded he believed appellants had demonstrated by clear and convincing evidence appellees had acted with malice and recklessness, because although the flooding was substantial, the appellees had not disclosed the information *Page 6 
on the residential property disclosure form, and subsequently denied the problem for eight months. Counsel stated he would elaborate in his closing statement, but did not inform the court he had further evidence to present on the issue. Tr. of Proceedings, V. 2, at 448-452.
 {¶ 16} We find the record does not support appellants' argument they had further evidence which the court prevented them from presenting.
 {¶ 17} Appellants also argue the court abused its discretion in finding they had not presented sufficient evidence to support their claim for punitive damages and attorney fees. The trial court found appellees had made an implied misrepresentation of fact regarding the property, but found it did not warrant the imposition of punitive damages and attorney fees.
 {¶ 18} In Preston v. Murty (1987), 32 Ohio St. 3d 334, the Ohio Supreme Court explained actual malice exists either when the state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or when there is a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. The trial court found the evidence presented did not meet this standard, and we find the trial court did not abuse its discretion.
 {¶ 19} The first assignment of error is overruled.
 II. {¶ 20} In their second assignment of error, appellants argue the trial court did not properly compute the rescission damages, because it did not give appellants credit for all the changes and improvements they made to the property. We agree in part. *Page 7 
 {¶ 21} The trial court found permanent improvements included replacing the roof, water heater, windows and doors, and repair to the electrical service and sump pump. The trial court did not reimburse appellants for replacing the existing furnace with a more efficient one, possibly because appellants testified the furnace they replaced was operable and not original to the house. We find the trial court should have given appellants credit for the replacement of the furnace, which is a fixture which enhanced the value of the home, and was not merely a personal preference or esthetic change. The new furnace cost appellants $3,700.
 {¶ 22} Further, the trial court did not include the benefit the appellees received in the use of appellants' $185,000 for four years. On remand, the trial court should compute the value of the interest appellees received on the principal sum, and add it to appellants' recovery along with cost of the furnace.
 {¶ 23} The second assignment of error is sustained in part and overruled in part.
 III. {¶ 24} Appellants also challenge the court's order their recovery should be reduced by four years of rent to compensate appellees for the time appellants lived in the home. We do not agree.
 {¶ 25} It appears well established where a contract for sale is rescinded, the sellers are entitled to a reasonable sum for the use and occupancy by the buyers, see, Areawide Homebuyers, Inc. v. Manser, 7th Dist. App. No. 04MA154, 2005-Ohio-1340.
 {¶ 26} Appellants also challenge the court's finding as to the fair rental value of the property. The only evidence presented at trial was the testimony of Philip Simmons, who testified he is a real estate broker, and a landlord with rental properties. Simmons *Page 8 
testified he believed the fair market rental value would be $1100 to $1200 per month, and he explained how he arrived at that figure. Appellants did not present any evidence to the contrary, and we find the trial court did not err in adopting Simmons' testimony.
 {¶ 27} The third assignment of error is overruled.
 {¶ 28} For the foregoing the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Farmer, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion. Costs to be split between the parties. *Page 1