THE STATE EX REL. WILEY, APPELLANT, *v.* WHIRLPOOL
CORPORATION ET AL., APPELLEES.

[Cite as *State ex rel. Wiley v. Whirlpool Corp.*,
100 Ohio St.3d 110, 2003-Ohio-5100.]

(No. 2003–0087—Submitted September 17, 2003—Decided October 15, 2003.)

**Per Curiam.**

{¶ 1} Appellant-claimant Janice H. Wiley was injured in a work-related accident on July 16, 1993, while employed by Whirlpool Corporation. She quit Whirlpool on January 3, 1995, under disputed circumstances that are now relevant because of her request for temporary total disability compensation ("TTC") starting as of the day after her departure from Whirlpool. The Industrial Commission ultimately denied compensation after finding that neither claimant's actions nor the medical evidence substantiated her claim that her departure was injury-induced.

{¶ 2} Her claim has been allowed for, among other things, reflex sympathetic dystrophy. The record is sketchy as to treatment dates and time missed from work prior to her departure from Whirlpool. Claimant apparently missed intermittent work days throughout 1994 due to her allowed condition. A physician's report mentions "22 or 23" stellate ganglion block procedures in 1994.

{¶ 3} There is evidence of these procedures on February 3, February 28, and March 7, 1994. From April 1, 1994, through December 4, 1994, there is no evidence that claimant's attending physician, Dr. Gerald R. Yarnell, saw her. There is evidence only of intermittent telephone conversations. During these calls, claimant generally related a pain level at or below four on a scale of one to ten. A particularly painful episode, however, was recorded on July 25, 1994, after a long shift at work.

{¶ 4} Nothing in Dr. Yarnell's 1994 records expressly recommended that she quit Whirlpool. Dr. Yarnell indicated in March that he hoped that Whirlpool would "be able to find her a job that does not require repetitive activities with her left upper extremity and also does not include pulling or lifting with the left upper extremity." An entry the next month noted that claimant had reported

that she was struggling physically to do her job. In a later deposition, however, Dr. Yarnell did not recall ever telling claimant that she should leave Whirlpool because of her condition.

{¶ 5} In late December 1994, Whirlpool closed for the holidays. Upon the plant's reopening on January 3, 1995, claimant told Whirlpool she was quitting, effective immediately. No reason was given on the form claimant signed. A January 16, 1995 consultation form from Dr. Yarnell indicated that another stellate ganglion block had been administered that day and related claimant's statement that she had left her job because of pain. A report of Dr. Stephen S. Wunder, however, stated that she told him she had quit in order to care for her children. Claimant's affidavit indicated that she left to relocate nearer to her family. She claimed that relocation was motivated by her need for family assistance in caring for the children due to her injury-related disability.

{¶ 6} Claimant's treatment after her departure is unclear. After the January 16, 1995 ganglion block, there is no evidence that she saw Dr. Yarnell again until December 11, 1995. From that point there is evidence of only two more visits— on January 25, 1997, and February 6, 1998.

{¶ 7} On April 26, 1996, claimant moved appellee Industrial Commission of Ohio to allow a psychiatric condition and order payment of TTC from January 4, 1995, forward. Later commission orders addressed the issue of the psychiatric condition, but not TTC. Finally, on September 1, 1998, the commission considered claimant's TTC request. Among other submitted evidence were two C–84 physician's reports from Dr. Yarnell dated January 25, 1997, and February 6, 1998, that certified claimant as continuously disabled since January 3, 1995.

{¶ 8} A commission majority did not find that these forms supported either the claimed disability or claimant's allegation that her departure from Whirlpool was injury-induced. As to the former:

{¶ 9} "The Industrial Commission finds that there is no credible medical evidence on file to support the payment of temporary total compensation from 01/04/95 and to continue. The Industrial Commission notes that most of the claimant's contact with Dr. Yarnell, six months prior to and six months following her resignation, was made by telephone. In addition, the Physician Statement of Temporary Total Disability was not completed by Dr. Yarnell until 02/06/98, three years after the alleged start date of the claimant's disability."

{¶ 10} On the question of voluntary versus involuntary separation, the commission found:

{¶ 11} "[T]he claimant voluntarily abandoned her employment on 01/03/95, when she resigned from her job at Whirlpool Corporation. Pursuant to the claimant's testimony at this hearing, she returned to work on 12/23/94, after being

released to do so by her physician of record. The claimant testified that the company was shut down from Christmas until the new year and that her first day back to work was 01/03/95. The 01/03/95 action slip, as signed by the claimant, indicates a voluntary resignation, with no mention of pain from her injury as the reason for her separation from employment or medical documentation of the same."

{¶ 12} A dissenting commissioner voted to grant TTC. He felt that Dr. Yarnell's January 16, 1995 office notes and treatment supported claimant's assertion that she left Whirlpool because of her RSD. The dissenter did not, however, address the majority's finding that Dr. Yarnell's C–84s were insufficient to support a finding of temporary total disability over the relevant period.

{¶ 13} Claimant petitioned the Court of Appeals for Franklin County for a writ of mandamus ordering the commission to grant her request for TTC. Finding the commission's decision to be supported by evidence, the court denied the writ of mandamus. This cause is now before this court upon an appeal as of right.

{¶ 14} A claimant's separation from employment is classified as either voluntary or involuntary. See *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. The latter includes an injury-induced departure and does not affect TTC eligibility. A voluntary departure, on the other hand, for years precluded TTC payment. That changed three years ago with our decision in *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355. In accordance with *Baker*, *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, held that a claimant who voluntarily leaves a position of employment—regardless of the circumstances—retains eligibility for TTC "if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job." *McCoy* at syllabus.

{¶ 15} In the case at bar, there is no evidence that claimant obtained other employment after leaving Whirlpool. Thus, any potential entitlement to TTC hinges on whether claimant's departure was involuntary. Contending that her decision to quit was motivated by injury, claimant asserts a right to TTC. The commission did not agree, and the court of appeals, upon consideration of the evidence, found no abuse of discretion. Our review compels the same conclusion, and, accordingly, we affirm the judgment of the court of appeals.

{¶ 16} The commission is the exclusive evaluator of weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.* (2000), 88 Ohio St.3d 284, 725 N.E.2d 639. Here, the commission found no injury-induced departure based on (1) the lack of any reference to her injury on claimant's departure form, and (2) the lack of credible evidence substantiating a causal relationship between injury and departure.

{¶ 17} Claimant contends that there is evidence of record that supports her position, in particular, her affidavit and Dr. Yarnell's two C–84s. This evidence, however, is immaterial so long as the commission's decision is also supported by evidence, which it is. The commission's evidentiary prerogative entitled it to favor claimant's contemporaneous departure form over her later affidavit. It also permitted the commission to discredit Dr. Yarnell's belated C–84s in light of evidence nearer to claimant's resignation date that neither indicated a medically advised departure nor had the doctor-patient contact to support one.

{¶ 18} Accordingly, we find no abuse of discretion and affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———————

Stephen E. Mindzak Law Offices, L.L.C., and Stephen E. Mindzak, for appellant.

Roetzel & Andress, Douglas E. Spiker and Eric S. Bravo, for appellee Whirlpool Corporation.

Jim Petro, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee Industrial Commission.