[Cite as *Koonce v. Liverpool Express, Inc.*, 2015-Ohio-50.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**MARION COUNTY**

CHRISTOPHER KOONCE,

    PLAINTIFF-APPELLEE,

    v.                             CASE NO. 9-14-17

LIVERPOOL EXPRESS, INC., ET AL.,

    DEFENDANTS-APPELLANTS,
    -and-

BLUE START ENTERPRISES          O P I N I O N
LTD., ET AL.,

    THIRD-PARTY DEFENDANTS-
    APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 12 DR 022413 CV 403

Judgment Affirmed

Date of Decision: January 12, 2015

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *David H. Lowther* for Appellee

Case No. 9-14-17

**SHAW, J.**

{¶1} Defendants-appellants Liverpool Express, Inc., and Lakhvir Sidhu ("Sidhu") appeal the April 17, 2014, judgment of the Marion County Common Pleas Court awarding plaintiff-appellee Christopher Koonce ("Koonce") a judgment following a bench trial in the amount of $14,434.97 for anticipatory breach of contract.

{¶2} The facts relevant to this appeal are as follows. On July 27, 2012, Koonce and Sidhu/Liverpool Express[1] entered into a vehicle sales agreement wherein Sidhu agreed to sell a 2000 utility refrigerator tractor-trailer to Koonce for $18,000 to be paid in installments, with the title of the tractor-trailer to be transferred to Koonce upon receipt of the final payment. The parties also entered into a lease agreement on the same date that allowed Koonce to use the trailer starting July 27, 2012, while Koonce was still making the installment payments.

{¶3} Koonce took possession of the trailer on July 27, 2012 and used it until December 9, 2012, at which time it was seized while Koonce was making a delivery of blueberries in Texas due to the trailer having a fictitious VIN number. At that time, Koonce had paid Sidhu $14,000 toward the purchase of the trailer.

{¶4} On January 31, 2013, Koonce filed a complaint against Liverpool Express and Sidhu alleging breach of contract. The complaint indicated that the

---

[1] Sidhu is the owner of Liverpool Express along with his wife. Whether Sidhu individually or Liverpool Express was the party entering into the contract for the sale of the trailer is actually disputed in this appeal.

trailer had been seized by the New Braunfels Police Department "for [the] reason that [the officer] believed that it was a stolen trailer and the vin # had been altered." Sidhu and Liverpool Express jointly filed an answer on February 25, 2013, denying breach of contract.

{¶5} On March 15, 2013, the Municipal Court of New Braunfels, Comal County, Texas, held a hearing to determine the "rightful owner" of the trailer. (Pla's Ex. 4). Sidhu was notified of the proceedings, but through his attorney, waived any interest in the trailer and did not appear. (*Id*.) The Texas court therefore determined that the rightful owner of the trailer was unknown and that the trailer was abandoned. (*Id*.) The trailer was then awarded to the New Braunfels Police Department to be disposed of. (*Id*.)

{¶6} On May 29, 2013, Sidhu filed a counterclaim against Koonce for the unpaid $4,000 on the trailer and a third party complaint against Blue Star Enterprises for an amount in excess of $18,000. (Doc. 1). Sidhu claimed that Blue Star should be held liable for selling the trailer with the fictitious VIN number to Sidhu/Liverpool Express. (*Id*.)

{¶7} On June 26, 2013, the case was transferred from the Marion Municipal Court to the Marion County Common Pleas Court due to the third party complaint exceeding the jurisdictional limits of the municipal court. (Doc. 8).

{¶8} On April 2, 2014, the dispute between Koonce and Sidhu/Liverpool Express proceeded to a bench trial. The parties, Koonce and Sidhu, were the only witnesses to testify at trial.

{¶9} Koonce testified that he operated a trucking business called "Koonce Family Trucking" and that he entered into an agreement with Sidhu/Liverpool Express to purchase a "53 foot Refer [refrigerator] trailer, tractor trailer." (Tr. at 5). The agreement was entered into evidence and it called for three payments to be made in installments on specific dates, with a $5,000 down payment. (Pl's Exhibit. 1). Koonce testified that he did not make the payments on the dates listed in the contract; however, he testified that Sidhu had verbally agreed to work with him and give him more time to make the payments. Koonce testified that Sidhu accepted two late installment payments of $5,000 and $4,000 before the trailer was seized. (Tr. at 7).

{¶10} Koonce testified that on December 9, 2012, he was "running a load" from Florida to Georgia and finally to Texas. (Tr. at 8). Koonce testified that while on that delivery, he was stopped at a truck stop for a nap and was awakened by a police officer who told Koonce that there was a problem with the VIN number on the trailer. (Tr. at 9). Koonce testified that he followed the police to the police station where they checked the secondary VIN and that the police then

confiscated the trailer under the suspicion that it may have been stolen.[2] (Tr. at 10-11).

{¶11} Koonce testified that he called Sidhu when the trailer was seized and spoke to Sidhu's wife and to Sidhu's mechanic, but he did not get in touch with Sidhu. (Tr. at 21). Koonce testified that there was a property hearing held in Texas for anyone with a proper claim to the trailer to come forward or the trailer would be forfeited. (Tr. at 16-18). Koonce testified that Sidhu did not attend the forfeiture hearing to demonstrate ownership of the trailer, so the judge ordered the trailer forfeited. (*Id.*) The Texas court's "order disposing of property" was entered into evidence. (Pl.'s Ex. 4).

{¶12} Koonce testified that as far as he knew the trailer was now property of Texas, so he was seeking the money he paid Sidhu for the trailer up that point, $14,000, and the money that he paid to rent a trailer to finish his delivery of blueberries in Texas after his trailer was seized, which amounted to $434.97. (Tr. at 22). Koonce also requested that the court reimburse him for lost business revenue in the amount of $10,000 for the month it took him to locate another suitable trailer after the trailer in this case was seized. (Tr. at 24).

---

[2] Koonce testified that the police allowed him to take his load of frozen blueberries off of the trailer, put them on a trailer he rented so he could deliver the load, saving him from a potential loss of $40,000 if the load was not delivered. (Tr. at 14).

{¶13} On cross-examination Koonce testified that he did not check with the DMV regarding the VIN number on the trailer when he purchased it because he did not believe that Ohio offered that service for trailers. (Tr. at 40). Koonce did testify that before the trailer was seized he had an inspection in California and had no problems. (Tr. at 41).

{¶14} Sidhu then took the stand and testified that he did enter into the sales agreement with Koonce for the sale of the refrigerator trailer. (Tr. at 51). Sidhu testified that the agreement was signed by him, that the trailer was in his name personally, and that Koonce's checks were made out to him personally for the installments rather than to Liverpool Express. (Tr. at 51-52).

{¶15} Sidhu testified that the sales agreement specified certain dates when Koonce's installments would be paid, but that Koonce was late on those installments. (Tr. at 51-59). Sidhu testified that he did agree to accept late payments from Koonce. (Tr. at 58). Sidhu testified that he had prior dealings with Koonce so he was willing to work with him on that issue. (Tr. at 56).

{¶16} Sidhu testified that he was not aware of any problem with the VIN number on the trailer and that he would not have sold it if he had known about it. (Tr. at 52). Sidhu testified that he had bought the trailer from Blue Star Enterprises, and his title listing Blue Star as the previous owner was introduced into evidence. (Def's Ex. 4). Sidhu testified that he had used the trailer for four

years prior to selling it to Koonce, and that he had no issues with it previously. (Tr. at 59).

{¶17} Sidhu also testified that he was notified of the property hearing in Texas but he could not go because he ran his own business and he was the only person working. (Tr. at 55). Sidhu testified that it would "cost [him] more than [the trailer]" in lost business if he left work to travel to Texas and contest the forfeiture. (*Id.*) At the conclusion of Sidhu's testimony, the trial was complete.

{¶18} On April 17, 2014, the trial court filed its judgment entry on the matter. The court's entry made findings of fact and conclusions of law. (Doc. 20). Ultimately the trial court found that Sidhu had committed an anticipatory breach of contract and the court granted judgment in favor of Koonce against Sidhu personally for the money that Koonce had paid Sidhu for the trailer, $14,000. (*Id.*) In addition, the trial court granted Koonce judgment for money he used to rent a trailer to finish his delivery in Texas after the trailer was seized, $434.97, for a total award of $14,434.97, plus interest and costs. (*Id.*) Koonce was not awarded money for claimed lost business revenue for the period when he was searching for a replacement trailer. (*Id.*)

{¶19} It is from this judgment that Sidhu and Liverpool Express appeal, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY CONCLUDING THE DEFENDANTS[-]APPELLANTS COMMITTED AN ANTICIPATORY BREACH OF THE SALES AGREEMENT.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY GRANTAING JUDGMENT TO PLAINTIFF-APPELLEE IN THE AMOUNT OF $14,434.97.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT, LAKHVIR SIDHU, BY GRANTING JUDGMENT AGAINST HIM PERSONALLY IN FAVOR OF PLAINTIFF-APPELLEE.**

*First Assignment of Error*

**{¶20}** In their first assignment of error, appellants contend that the trial court erred by finding that Sidhu had committed an anticipatory breach of the sales contract. Specifically, appellants argue that "no words or acts [were committed by appellants] evincing an unequivocal intention to refuse performance in the future." (Appt's Br. at 8).

**{¶21}** In determining whether a trial court's ruling is against the weight of the evidence:

> **[t]he [reviewing] court \* \* \* weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.**

-8-

(Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. If the evidence presented to the trial court is susceptible to more than one interpretation, we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts. *Nguyen v. Chen*, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, ¶ 23 citing *Jones v. Homes,* 12th Dist. Butler No. CA2012–07–133, 2013–Ohio–448, ¶ 24.

{¶22} "An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived." *McDonald v. Bedford Datsun,* 59 Ohio App.3d 38, 40 (8th Dist.1989), citing *Smith v. Sloss Marblehead Lime Co.,* 57 Ohio St. 518 (1898). "To prevail on a claim of anticipatory breach of contract, a plaintiff must establish that there was a contract containing some duty of performance *not yet due*, and that by word *or deed*, the defendant refused future performance, causing damage to the plaintiff." (Emphasis added.) *Metz v. Am. Elec. Power Co., Inc.,* 172 Ohio App.3d 800, 2007-Ohio-3520, ¶ 35 (10th Dist.).

{¶23} If an anticipatory breach of contract is found to occur, the injured party has the option of (1) terminating the contract and suing the breaching party immediately, or (2) continuing the contract and suing the breaching party for

damages after the time for performance has passed. *S.E. Land Dev. Ltd. v. Primrose Mgmt. L.L.C.,* 193 Ohio App.3d 465, 2011-Ohio-2341, ¶ 7, (3d Dist.) citing 18 Ohio Jurisprudence 3d Contracts, Section 237 (2011).

{¶24} In this case, there is no dispute that the parties entered into a sales agreement for a trailer in exchange for $18,000 to be paid in installments and a lease agreement for that same trailer. There is also no dispute that while Koonce paid the $5,000 down payment for the trailer, he was late on two of the installment payments and Sidhu worked with Koonce and accepted those late installment payments. In addition, there is no dispute that the trailer in question was seized for having a fictitious VIN number while Koonce was in Texas, that Sidhu waived his interest in the trailer in the property proceedings, and that the trailer was ultimately forfeited.

{¶25} Based on these facts, the trial court made the following conclusions of law.

1. **At no time material to this action did the Defendants have a valid title to the trailer, as the VIN number on the trailer had been altered. Under Ohio Motor Vehicle Title Law, a thief cannot pass valid title of a stolen vehicle to a bona fide purchaser for value without notice. *Allan Nott Enterprises, Inc. v. Nicholas Starr Auto, LLC (2006)*, 100 Ohio St.3d 112).**

2. **When Plaintiff was not able to remain in possession of the trailer due to its seizure, Defendants were in breach of the lease agreement for the trailer.**

3. **Once it became apparent to the Plaintiff that the Defendants would not be able to provide a valid title to the trailer, this constituted an anticipatory breach of the contract and Plaintiff was no longer under an obligation to pay the remaining balance of the purchase price. See e.g.** *Southeast Land Dev,,* **[sic]** *LTD v. Primrose Mgt., L.L.C.***, (3rd App. Dist. 2011), 193 Ohio App.3d 465.**

4. **Defendants' act of waiving any interest in the trailer constituted a further breach of the vehicle sales agreement and further confirms the aforementioned anticipatory breach.**

(Doc. 20).

{¶26} On appeal, appellants argue that the trial court erred in finding that an anticipatory breach was committed because appellants had not unequivocally demonstrated their unwillingness to perform their obligations under the contract. We disagree.

{¶27} Appellants' arguments ignore the fact that once the trailer was seized and the VIN number was determined to be fictitious, appellants were *incapable* of performing their obligations under the contract. Good title could not be provided to Koonce when he finished paying for the trailer and possession of the trailer could not be provided. Sidhu had actually *waived* his interest in the trailer, giving Sidhu a bad title to an item he explicitly did not attempt to defend as his own. As these actions support the trial court's decision to find an anticipatory breach of contract, and would support a finding that appellants, by their deeds, would not

perform their obligations in the future when they came due, we cannot find that the trial court's decision was against the weight of the evidence.

{¶28} We would note that although the appellants argue against the presence of an anticipatory breach of contract in this case, they argue in favor of a "mutual mistake," which would require rescission of the contract if present. To support this argument appellants contend that at the time of forming the contract, neither party knew that a problem existed with the VIN number and that this problem was material to the formation of the contract. Thus appellants claim that the trial court should have rescinded the contract between the parties as there was no "meeting of the minds."

{¶29} What the appellants ignore, however, is that even if the contract was rescinded, appellants would still be required to return the money Koonce had paid to the appellants for the trailer. *Areawide Home Buyers, Inc. v. Manser*, 7th Dist. Mahoning No. 04MA154, 2005-Ohio-1340, ¶ 30 (7th Dist.) ("[In a case of rescission] [a] purchaser generally should recover the money paid on the purchase price."); *See also Bell v. Turner*, 4th Dist. Highland Nos. 09CA20, 09CA21, 2010-Ohio-4506, ¶ 13 citing *Mid–America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599, (10th Dist.1989) (" 'Returning the parties to status quo is an integral part of rescission, and in doing so it is generally necessary to award the party seeking rescission at least his out-of-pocket expenses.' "). Thus even if the trial court

rescinded the contract for mutual mistake (or we elected to do so ourselves on appeal), appellants would still have to return the money Koonce had already paid for the trailer.

**{¶30}** Accordingly, for all of these reasons, appellants' first assignment of error is overruled.

*Second Assignment of Error*

**{¶31}** In appellants' second assignment of error, they argue that the trial court erred by granting judgment to Koonce in the amount of $14,434.97. Specifically, appellants contend that Koonce was in possession of the trailer from July 27, 2012, through December 9, 2012, and that any award to Koonce should be offset by Koonce's use of the trailer.

**{¶32}** At the outset we would note that appellants do not clearly make this argument at the trial court level and therefore they have waived this argument for purposes of appeal. *Crase v. Shasta Beverages, Inc.*, 10th Dist. Franklin No. 11AP-519, 2012-Ohio-326, ¶ 29.

**{¶33}** Nevertheless, even assuming appellants made this argument at the trial court level, and even assuming there was some validity to it, there is absolutely no testimony or evidence as to what a fair rental or fair use value would have been for the trailer over the months that Koonce used it. Appellants simply failed to put forth any evidence as to this issue.

{¶34} Moreover, the trial court specifically found that "[d]uring the 4½ months [Koonce] was in possession of the trailer, [Koonce] incurred substantial expenses to repair and improve the trailer, the cost of which equaled or exceeded any depreciation for the trailer during the time he was in possession." (Doc. 20). Thus despite appellants' failure to put on any evidence of reasonable rental value, the trial court did at least specifically factor in depreciation, and offset it with the upkeep that Koonce had to pay on the trailer.

{¶35} Accordingly, for all these reasons we cannot find that the trial court erred by electing not to award appellants with an offset for any value of Koonce using the trailer. Therefore, appellants' second assignment of error is overruled.

*Third Assignment of Error*

{¶36} In appellants' third assignment of error, they contend that the trial court erred by granting judgment against Sidhu individually in this case rather than against Liverpool Express. Specifically appellants contend that the trial court "pierced the corporate veil" of Liverpool Express in order to find Sidhu personally liable in this case, and that the proper party to hold liable was Liverpool Express.

{¶37} In this case the "Vehicle Sales Agreement" between the parties listed "Liverpool Express, Inc." as the seller of the trailer. However, the actual owner of the trailer was not Liverpool Express, but rather Sidhu himself, as established by the testimony of Sidhu, and the title that Sidhu introduced into the record. (Def.'s

Ex. 4). Sidhu's title listed the current owner as "Lakhvir S. Sidhu" and the former owner as "Blue Star Enterprises LTD." (*Id.*) Sidhu admitted at trial that the title was in his name individually, and that he was the seller of the trailer. (Tr. at 59, 66). There is no indication from the record that Liverpool Express ever owned the trailer or that Sidhu transferred ownership of the trailer to Liverpool Express. Thus it would be impossible for Liverpool Express to be the seller of the trailer.

{¶38} Moreover, Sidhu testified that the checks Koonce wrote for the down payment and the installment payments were addressed to Sidhu personally rather than Liverpool Express and that Sidhu personally cashed them. (Tr. at 51). Copies of the checks were also introduced into evidence establishing that the money was paid to Sidhu personally instead of Liverpool Express. (Pl.'s Ex. 5).

{¶39} On the basis of the testimony and exhibits, we do not find that the trial court erred in holding Sidhu personally liable rather than Liverpool Express. The trial court never specifically "pierced the corporate veil" in this case and did not need to as Sidhu personally was the owner of the trailer and he personally accepted the payments for it.[3] Appellants' arguments on this issue are thus not well-taken, and this assignment of error is therefore overruled.

---

[3] Perhaps Sidhu's confusion arises from the fact that the trial court questioned Sidhu at trial about Liverpool Express and Sidhu's role as owner. In answering the trial court's questions, Sidhu testified that he owned Liverpool Express along with his wife. Sidhu testified that Liverpool Express was a small corporation and that the only officer was Sidhu himself, and that there was no board of directors. The trial court's inquiry into these matters does not mean that the trial court "pierced the corporate veil" as indicated by the appellants.

{¶40} For the foregoing reasons appellants' assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSI, J.J., concur.**

**/jlr**